## McMANUS v. ST. REGIS PAPER CO.

(Supreme Court, Appellate Division, Fourth Department. July 6, 1905.)

1. MASTER AND SERVANT—FELLOW SERVANTS—NEGLIGENCE OF SUPERINTEND-
   ENT.
     The neglect of a superintendent to replace guards on machinery after
   having removed the same to repair the machinery is, under the common
   law, the negligence of a fellow servant, for which the master is not liable.
     [Ed. Note.—For cases in point, see vol. 34, Cent. Dig. Master and Serv-
   ant, §§ 427–435, 458.]

2. SAME—LABOR LAW—DUTY TO GUARD MACHINERY—NEGLIGENCE OF SUPER-
   INTENDENT.
     Under the labor law (Laws 1899, p. 353, c. 192, § 81), requiring all ma-
   chinery to be properly guarded, and providing that no person shall remove
   any safeguard attached to machinery, unless for the purpose of immediate
   repairs, and safeguards so removed shall be promptly replaced, the neg-
   lect of a superintendent to replace safeguards after repairing the machin-
   ery, and the consequent leaving of the machinery unguarded for 11 or 12
   hours, was the negligence of the master, from the consequences of which
   he was not absolved by the fact that the superintendent instructed a ma-
   chine tender to replace the guards, and the latter negligently failed to do
   so.
     [Ed. Note.—For cases in point, see vol. 34, Cent. Dig. Master and Serv-
   ant, § 394.]

3. APPEAL—THEORY OF CASE—ERRONEOUS SUBMISSION—REVERSAL.
     In an action for injuries to a servant, the Appellate Division held that
   no cause of action was established at common law. On a retrial the court
   charged, at defendant's request, that defendant incurred no liability on
   the theory of failure to furnish plaintiff a safe place to work, or upon a
   failure to furnish plaintiff other or different ways, works, or machinery
   than it did, and that the statutes did not require defendant to guard or
   cover the machinery in any manner different than it did, and that the
   labor law had no application to the case. The instructions were erroneous
   in so far as the reference to the labor law was concerned, and notwith-
   standing the instructions a verdict was returned for plaintiff. Held that,
   as the case was submitted to the jury on an erroneous theory, the judg-
   ment entered on the verdict would be reversed, although a verdict for
   plaintiff might have been sustained under the labor law, and although the
   error was invited by defendant's counsel.

Appeal from Trial Term, Jefferson County.

Action by Charles McManus, an infant, by Alice McManus, his
guardian at litem, against the St. Regis Paper Company. From a
judgment for plaintiff, and from an order denying a new trial, de-
fendant appeals. Reversed.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS,
HISCOCK, and STOVER, JJ.

Henry Purcell, for appellant.

McCormick & Van Namee (N. F. Breen, of counsel), for respond-
ent.

McLENNAN, P. J.    The facts so far as material to the questions
involved upon this appeal are not in dispute, and may be briefly
stated. The defendant is a domestic corporation, and at all the times
in question was engaged in operating a machine of considerable
length, and somewhat complicated for the manufacture of paper.

Such machine was comparatively new, complete in all its parts, and in proper repair. The superintendent, night foreman, and all the other employés of the defendant who were engaged in operating the machine were in all respects competent to perform their respective duties. On the 31st day of August, 1902, at about half past seven in the morning, the plaintiff, who was then about 17 years of age, and in the employ of the defendant, was engaged in operating or looking after a part of the machine, among others, known as the "winder," and while so employed his right hand got between two cogwheels which were near or connected with the part of the machine that he was then giving his immediate attention to, and his hand was crushed, which is the injury for which he seeks to recover in this action. The plaintiff had been in defendant's employ for about six weeks prior to the accident, and was entirely familiar with the machine and the manner of operating it at the place in question; but during all of such time the cogs in question had been entirely covered and were hidden from view by an iron cap or guard which was placed over them, and held in position by two bolts, onto which nuts were turned. According to the plaintiff's testimony, during all the time he had worked for the defendant he had never known of such guard being removed; that at the time he supposed the cogs were covered as before, and therefore apprehended no danger from their operation. On the day previous to the accident the plaintiff finished his work about 6 o'clock p. m., and went to his home. Soon after he left, the machine tender discovered that the winder did not operate properly, and, for the purpose of ascertaining and rectifying the difficulty, removed the guard, and placed it on the floor near by. A few minutes later defendant's general superintendent and the night foreman came to the machine, and for about half an hour worked with the machine tender at the gears or cogs from which the guard had been removed, for the purpose of rectifying the difficulty. At the end of such time the difficulty was remedied, and the machine began to run all right; and, so far as appears, there was no reason why the guard should not then have been replaced. While the guard was on the floor, and after the machine commenced to run properly, the superintendent left the room, instructing the machine tender to put the winder back into the condition in which it had been; and it was the duty of the machine tender, irrespective of such specific instruction, to replace the guard over the cogs, but this duty was not performed by him or any one else. The cogs were left uncovered all night, and until after the accident occurred the following morning. There was no difficulty in replacing the guard. It weighed only about three pounds. It was only necessary to put it in position, put a bolt through each end, and screw a nut on with a wrench, all of which appliances were at hand. The next morning at about 7 o'clock—the usual time—the plaintiff came to work. He had been engaged about 15 minutes, when, in attending to some part of the machine which made it necessary for him to reach over the cogs in question, his attention was attracted by some direction given by the foreman or other employé, and he dropped his right hand be-

tween the unguarded cogs. The room was well lighted, and the cogs were plainly visible, but the plaintiff testifies that he did not see them, and was not looking for them—in effect, that he supposed they were covered as before, and as they had been during all the time he had been in defendant's employ, engaged in operating the machine.

The complaint, in effect, alleges that the defendant was negligent because it failed to discharge the duty imposed upon it by the common law; also in that it violated the provisions of the employers' liability act (chapter 600, p. 1748, of the Laws of 1902), and because it violated section 81 of chapter 192, p. 353, of the Laws of 1899 (the labor law, so called). That section provides:

"All * * * cogs, gears, * * * and machinery of every description shall be properly guarded. No person shall remove or make ineffective any safeguard around or attached to machinery * * * unless for the purpose of immediately making repairs thereto, and all such safeguards so removed shall be promptly replaced."

Upon a former trial of this case, where the plaintiff obtained a verdict, the trial court held that recovery could only be had under the common-law liability of master to servant, and practically that the question of defendant's liability under either of the statutes was not involved. Upon appeal to this court it was in effect held (100 App. Div. 510, 91 N. Y. Supp. 1102) that the evidence failed to establish any common-law liability against the defendant, for the reason, among others, that the failure to replace the guard was a mere detail of the work, and that the neglect of the superintendent to replace it was the neglect of a competent fellow servant, for which the defendant was not liable. We adhere to that view, and hold that the evidence in this case does not tend to establish that the defendant was guilty of negligence under the common-law rule. Upon the last trial the case was tried upon the theory that the defendant was liable because of a violation of the provisions of the statute to which attention has been called, and the evidence would seem to indicate quite clearly that at least the defendant failed to discharge the duty imposed upon it by section 81 of the labor law, above quoted, in that it failed to cause the guard removed from the cogs in question with the knowledge of defendant's superintendent to be promptly replaced. Such guard was permitted to remain off the machine for 11 or 12 hours without any necessity therefor, or even for convenience. The defendant's general superintendent knew that the guard was off, and his knowledge in that regard was the knowledge of the defendant. In that respect he stood in the place of the defendant, and it was clearly his duty to see to it that it was promptly replaced after he knew that the repairs were completed, and the necessity for its being off had ceased to exist. Instead of performing such duty, he assumed to delegate its performance to the machine tender, and it was not performed. The failure to replace the guard, under the circumstances, we think, was the failure of the defendant, and that for any injury resulting therefrom the defendant is liable. The statute ought not to be interpreted to mean that, when a defendant knows that a guard

covering cogwheels or gears which by the statute are required to be covered has been removed, he can absolve himself from liability for a failure to replace it by directing some employé to perform that duty. Such interpretation would practically nullify the statute, and would not render any additional protection to employés engaged in operating machinery, which was clearly the purpose of the act. It appears, however, that the case was not submitted to the jury upon any such theory. The court charged, in answer to the requests of defendant's counsel, that no negligence of the defendant—

"Can be predicated upon the omission of the defendant to furnish the plaintiff a safe place in which to perform his work, * *· * and that no negligence can be predicated upon the failure of the defendant to furnish plaintiff with other or different ways, works, and machinery than it did on this occasion. * * * That the statutes of this state did not require the defendant, as to this plaintiff, to guard or cover the cogwheels or gearing differently than it did on the occasion in question. * * * That the statute of this state known as the 'Labor Law,' applying to factories, which requires the proper guarding of cogwheels and gearing, is not applicable to the case at bar, and its alleged violation by the defendant cannot be considered by the jury as even tending to establish negligence on the part of the defendant."

The last is charged, as stated by the learned court, "because it was not a failure to put the guard on in the first instance. I understand all the machinery was properly guarded."

After charging in the language above quoted, the learned court said:

"I submit the case to the jury upon this theory: That although the defendant had guarded this machinery, and all that sort of thing, and under this new statute, where it says, by reason of any defect in the condition, that, when that guard was left off by some of their employés, then, if it was left off, and the plaintiff was free from negligence contributing to his injury, and did not assume the risk, then the defendant would be liable, if they find that they left it off, and it was left off through the negligence of the employer, or any person in the service of the employer, intrusted by him with the duty of seeing that the ways, works, or machinery were in proper condition. That is the theory in which I let this case go to the jury."

The jury having been told, in substance, that the defendant incurred no liability predicated upon its failure to furnish the plaintiff a safe place in which to perform his work, or upon its failure to furnish the plaintiff with other or different ways, works, or machinery than it did, and that the statutes did not require the defendant to guard or cover the cogwheels in question in any manner different from what it did, and this court having held that the defendant was not liable under the common law, we fail to appreciate how or upon what theory the jury reached the conclusion which they did. It may be said that, if the instructions given to the jury were erroneous, they were given pursuant to requests of defendant's counsel. But the difficulty is that the law as laid down became the law of the case, and for all the purposes of the trial which we are reviewing. Defendant's counsel had a right to know the ground or grounds upon which a verdict against the defendant might be based, and when the jury were specifically told that the place so furnished by the defendant was safe, and that it was not required to furnish other

or different ways, works, or machinery than it did, and that there was no statute which required it to guard or cover the cogwheels in question, so far as this plaintiff is concerned, and that it had incurred no common-law liability by any of its acts or omissions in the premises, naturally defendant's counsel might feel reasonably contented, because such instructions measured the defendant's liability so far as that trial was concerned, however erroneous they might be. While there are other expressions in the charge more or less in conflict with those alluded to, we think defendant's counsel had a right to assume that the propositions thus specifically and pointedly charged measured the defendant's liability.

Without intending to indicate that, in our opinion, the evidence in this case, if believed by a jury, was not sufficient to establish negligence as against the defendant under the provisions of the section of the labor law to which attention has been called, or that the evidence is not sufficient to absolve the plaintiff from the charge of contributory negligence or the assumption of risk, nevertheless, in view of the instructions given to the jury by the learned trial court, we think the judgment and order appealed from must be reversed, and a new trial granted, with costs to the appellant to abide event. All concur.

Judgment and order reversed and new trial granted, with costs to appellant to abide event, upon questions of law only; the facts having been examined, and no error found therein.